Mead v. Anderson.

---

## W. C. MEAD *et al.* v. BEVERLY ANDERSON.

1. TEMPORARY INJUNCTION — *Discretion of Court — Practice.* The refusing or granting of a temporary injunction is largely in the discretion of the judge or court, and for that reason close and intricate questions will not be reviewed, and the action of the court reversed, unless it shall clearly appear that the judgment or order is erroneous.

2. GRANTEE, *Entitled to Right-of-Way Over Grantor's Land, When.* Where the owner of a tract of land fronting upon a public highway sells a portion thereof, which portion is entirely surrounded by the land of the grantor and of strangers, with no outlet to the public road except over the lands of the grantor, *held*, that such grantee is entitled to a right-of-way over the grantor's land, unless the situation of the land, or the object for which it is used and conveyed, shows that no grant of such right was intended.

*Error from Shawnee District Court.*

THE agreed statement of facts and the findings of the court show conclusively the following: In 1877 *W. C. Mead* pur-

chased several tracts of land, all joining, and afterward, in 1877, he conveyed thirty acres out of the southeast corner and ten acres on the north side to his son, William Mead, who afterward resided on the ten-acre tract until 1881, when he reconveyed to his father the ten-acre tract, and moved upon the thirty-acre tract, where he continued to reside until 1883, when he sold the tract to *Beverly Anderson*, the defendant in error, who has lived upon the land ever since; that while William Mead resided upon the ten-acre tract he had a right-of-way from the ten-acre tract to the thirty-acre tract, and after moving onto the thirty-acre tract, continued to have a right-of-way west and north to the public highway; that there was a public road on the west and north of the entire tract of land as originally owned by W. C. Mead; that at the time of Anderson's purchase he was shown a road or track from the thirty-acre tract purchased by him west to the public road, as the way out for him, it being the way in controversy; and he continued to use the same up to the commencement of this action. In 1886 W. C. Mead sold and conveyed to Sentenna Mead a part of the original tract of land lying between Anderson's land and the public road, on the west, through which tract the road as used by Anderson runs; Anderson's thirty acres of land being surrounded by other land, with no way to a public road except over Mead's land; and to prevent the closing up of said road this action to enjoin W. C. Mead and Sentenna Mead was brought by Anderson. The court granted a temporary restraining order and required notice to be given, and on March 30, 1887, granted a temporary injunction, restraining W. C. Mead and Sentenna Mead from closing up the road used by Anderson. To review this order the *Meads* bring the case here.

*Gunn & Starbird*, for plaintiffs in error.
*M. E. Matthews*, for defendant in error.

Opinion by CLOGSTON, C.: It has often been held by this court that the refusing or granting of a temporary injunction

is largely in the discretion of the judge or court, and for that reason close and intricate questions will not be reviewed and the action of the court or judge reversed, unless it shall clearly appear that the judgment or order is erroneous. The reason for this is clear, that while a temporary injunction is granted, yet at the final hearing the court will more closely determine the rights of the parties, and then if it is found that the temporary injunction was improvidently granted, it will be dissolved, or not made perpetual. (*Stoddard v. Vanlaningham*, 14 Kas. 24; *Conley v. Fleming*, 14 id. 381; *Davis v. Stark*, 30 id. 565.) With this view, some of the questions presented will not be determined.

The principal question presented, however, is, by the purchase of the thirty-acre tract by Anderson from William Mead, did Anderson obtain a right-of-way across the land of W. C. Mead? For if he did, then that disposes of this case; for Sentenna Mead purchased long after Anderson was in possession and use of this right-of-way, with a full knowledge of Anderson's rights. The rule is fundamental that where one purchases land from another, he purchases also the right of access thereto. (*Smyles v. Hostings*, 22 N. Y. 217; *Holmes v. Seely*, 19 Wend. 507; *Myers v. Dunn*, 49 Conn. 71; *Taylor v. Warnaky*, 55 Cal. 350; Washburn on Easements and Servitudes, p. 49; *Bass v. Edwards*, 126 Mass. 445; *Buss v. Dyer*, 125 id. 287; *Nichols v. Luse*, 24 Pick. 102; *Pingree v. McDuffie*, 56 N. H. 306.) And this right cannot be taken away when once obtained. The rule is subject to exceptions, of course. The contract of the parties always governs, and when it can be ascertained that no grant of such right was intended, none will pass. Each case then must stand on the facts that surround it. Where land is purchased with the understanding that a right-of-way used by the grantor can still be used, the right will pass with the grant. (*Seeley v. Bishop*, 19 Conn. 128; *Collins v. Prentice*, 15 id. 39; *Nichols v. Luce*, 41 Mass. 102.) So in this case, where it is shown that William Mead, from 1877 up to 1883, used the road claimed by Anderson, or part of the same road, in passing

from the thirty-acre tract across the lands of the grantor, and that he showed such way to Anderson as his way, and Anderson had so continued to use such way, with the consent and knowledge of W. C. Mead, such circumstances strongly show what were the understood rights of the parties.

But it is contended that the right is either a common-law right, or one by contract, and as the legislature has provided ample means for Anderson to procure a private road, being surrounded with the lands of others, that this statutory right supersedes the common law. This question we deem it not necessary to pass upon as we view this case. Under some circumstances the right would only be such as is given by statute. The situation of the land, the obvious intention and any understanding of the parties at the time of the grant, may be such as to preclude even the possibility of a right-of-way across the lands of the grantor; but this was not one of those cases. The conduct and situation of the parties, and the uses to which the land was put; the fact that no other way out from the land was provided or contemplated; and the continued use of the right-of-way, we think clearly show what was intended and included in the grant.

With these views, we see no error in the judgment of the court below. It is therefore recommended that the judgment be affirmed.

By the Court: It is so ordered.

All the Justices concurring.